IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | Case No. 19-CR-754 |
| v. | ) | Honorable Mary M. Rowland |
| | ) | Judge Presiding |
| EDUARS JACQUIN | ) | |

**DEFENDANT EDUARS JACQUIN'S OBJECTIONS TO THE PRESENTENCE INVESTIGATION REPORT AND POSITION PAPER AS TO SENTENCING FACTORS**

The Defendant, EDUARS JACQUIN ("Mr. Jacquin,") through his counsel, LISA M. LOPEZ, hereby submits his Objections to the Presentence Investigation Report and Position Paper as to Sentencing Factors. Pursuant to 18 U.S.C. §§ 3553(a) and (f), Federal Rule of Criminal Procedure 32(c), as well as the United States Supreme Court opinions in *United States v. Booker*, 543 U.S. 220 (2005), *Rita v. United States*, 551 U.S. 338 (2007), *Gall v. United* States, 552 U.S. 38 (2007), and *Nelson v. United States*, 555 U.S. 350 (2009), Mr. Jacquin, through counsel, respectfully requests that this Honorable Court impose a sentence of 36 months' imprisonment, which is sufficient, but not greater than necessary to effectuate the goals of 18 U.S.C. § 3553(a) given Mr. Jacquin's traumatic hardships and prolonged battle with addiction.

## I. Background

Mr. Jacquin is a 34-year-old man who has been addicted to crystal methamphetamine ("crystal meth") for over half of his life. When he was a young child, his mother left him in his birthplace of Venezuela to be cared for by relatives when she moved to the United States to seek cancer treatment. Instead of being cared for, he

suffered physical abuse by the hands of the man who was left in charge of raising him – his godfather. Mr. Jacquin endured endless physical trauma by this man during his formative years of life. The physical trauma escalated to sexual abuse before Mr. Jacquin was even a teenager.

Eventually, Mr. Jacquin and his godfather left Venezuela and relocated to Miami. It was there, in the city once known as the "drug capital of the world," where Mr. Jacquin's godfather introduced him to crystal meth.[1] Mr. Jacquin was still a teenager. The pair would use crystal meth together. His godfather also drank alcohol and introduced that to Mr. Jacquin as well. Though alcohol was not his first love, Mr. Jacquin would imbibe at times.

While Mr. Jacquin's teenage brain was being poisoned with alcohol and crystal meth, he continued to be abused by his godfather. Soon, Mr. Jacquin rebelled and ran away from him. He would stay on his friend's couch or with his girlfriend, while somehow still managing to attend high school. Mr. Jacquin also suffered medical issues during this time.

Mr. Jacquin was later married while still living in Miami. He was employed at a veterinary clinic and attended school. He was also clean during this time. However, he would soon divorce and move to Chicago, alone. It may have been his fear of being alone that drove him toward a new drug dealer.

[1] https://www.southmiamirecovery.com/miami-drug-treatment-history-1/ (last visited November 12, 2022).

Although Mr. Jacquin began using crystal meth again when he moved to Chicago, he also attended school. He earned college degrees and maintained employment at various animal hospitals around the Chicagoland area. However, when he wasn't working, he was using. He met his co-defendant, Paul Mosley, in the circle of crystal meth users. The circle of users was the only circle of friends Mr. Jacquin ever knew.

Mr. Jacquin and Mr. Mosley met in 2010. They spent nine years of their lives together as a couple. They lived together, sold drugs together, and were arrested together. Mr. Jacquin and Mr. Mosley sold crystal meth to feed their own addictions. The case that brought Mr. Jacquin before this Honorable Court is that on six separate occasions in 2018, Mr. Jacquin sold crystal meth to a confidential source. On five of these occasions, Mr. Mosley was present and involved in the distribution and receipt of the proceeds.

## II. Objections to the Presentence Investigation Report

Mr. Jacquin objects to the adjustment for role in the offense found on page 7, paragraph 17 of the PSIR. Two levels should not be added pursuant to U.S.S.G. § 3B1.1(c). Application Note 4 provides a list of factors the court should consider in distinguishing a "kingpin" role versus a management or supervisory role. U.S.S.G. § 3B1.1(c) n. 4. Indeed, the terms manager and supervisor are indistinguishable. *United States v. Figueroa*, 682 F.3d 694, 696 (7th Cir. 2012). Nevertheless, seven factors in Application Note 4 provide for a court's consideration in determining whether the enhancement applies. These are:

1. The exercise of decision-making authority;
2. Nature of participation of in the commission of the offense;
3. Recruitment of accomplices;
4. Any claimed rights to a larger share of the fruits of the crime;
5. Degree of participation in planning;
6. Nature and scope of the illegal activity;
7. Degree and control and authority exercised over others.

U.S.S.G. § 3B1.1(c) n. 4

In *Figueroa*, defendant was found to be a supervisor of another co-defendant in an enterprise with at least four participants. 682 F.3d 697. Defendant paid for a trip for his co-defendant and his family to pick up drugs, told the co-defendant where to deliver the drugs, and where to get paid. *Id.* The court also found that the defendant's supervision of his co-defendant was continuous and not a one-time event. *Id.* at 698.

Mr. Jacquin and Mr. Mosley were partners and collaborated on their drug sales together. There were no accomplices nor did one partner receive more fruits than another. They jointly vacuumed up whatever profits they earned together. If there was money left over from drug sales, it went toward basic needs like food and rent for their shared apartment. Mr. Mosely was not Mr. Jacquin's mule. He was his partner in life and partner in their drug distribution to the CS.

Moreover, one single factor does not justify the enhancement under § 3B1.1(c); the court must weigh the Guidelines' intent to differentiate amongst various degrees of responsibility. *United States v. Mankiewicz*, 122 F.2d 399, 406 (7th Cir. 1997). The mere fact that Mr. Jacquin brokered the deals with the CS should not give rise to a two-level enhancement. Therefore, a two-level supervisory enhancement is not warranted.

## III. Objection to Special Condition of Supervised Release Pursuant to 18 U.S.C. §3563(b)(22) and 3583(d)

Mr. Jacquin objects to special condition 14 found on page 27 of the PSIR. There is an insufficient basis for probation to form any conclusion for its recommendation that Mr. Jacquin undergo a "sex offender evaluation/assessment." PSIR at 27. Probation apparently draws this recommendation from two arrests found in paragraphs 43 and 45 of the PSIR. However, those cases were neither brought to trial nor ended in guilty pleas. Instead, two charges were stricken off with leave to reinstate and one charge was nolle prosequi.

Information that sentencing judges can consider must have a "sufficient indicia of reliability to support its probable accuracy." *United States v. Watts*, 519 U.S. 148, 157 (1997). *See also* U.S.S.G. § 6A1.3. This is a drug case without a mere shred of any sexual allegations contained therein. There are no elements of sex in the charged offense nor does Mr. Jacquin have any convictions that involve sex offenses. Moreover, Mr. Jacquin has been incarcerated for just over one year; and, he has not had any disciplinary incidents, sexual or otherwise, while at the MCC. The unreliable, unsupported allegations contained in police reports from cases that were never brought to trial or stipulated to in a guilty plea are insufficient to support the probable accuracy that the conduct occurred and should not be considered in imposing this condition of supervised release. As such, the special condition suggested is unwarranted.

## IV. Defendant's Offense Level, Criminal History Calculation and Application of The Safety Valve Provision

### A. Offense Level Calculation

Mr. Jacquin is responsible for distributing 506.6 grams of crystal meth to the CS in this case. He is jointly responsible for distributing 354.9 grams of crystal meth over the course of five transactions with Mr. Mosely and personally responsible for one transaction containing 151.7 grams of crystal meth. Therefore, pursuant to U.S.S.G. §2D1.1 (a)(5) and (c)(3), the base offense level is 34. Notably, this is at the low-end of level 34 as the range is from 500 grams to 1.5 kilograms of actual methamphetamine. *Id.* He should not receive a two-level adjustment for role in the offense as argued above. Mr. Jacquin has fully accepted responsibility for his actions and timely notified the government of his intention to plead guilty. He should therefore get a three-level decrease pursuant to U.S.S.G. § 3E1.1(a) and (b). His total offense level should be 31.

### B. Criminal History Calculation

Mr. Jacquin agrees with probation's calculation of his criminal history. He has two convictions for which he receives one point for, and one conviction for which he receives two points for. PSIR at 8-10; para. 30, 32. He was on probation at the time of the offense conduct and receives an additional two points for this infraction. PSIR at 12, para. 35. Therefore, his total criminal history six and puts him in criminal history category III.

### C. Applicability of 18 U.S.C. § 3533(f) and Resulting Guideline Range

Mr. Jacquin has satisfied the five factors set forth in 18 U.S.C. § 3553(f). As such, this Court should embrace its freedom to sentence Mr. Jacquin below the statutory

minimum of 120 months in this case. The resulting guideline range is higher than the statutory minimum. With a total offense level of 31 and a criminal history category of III, the resulting guideline range is 135 to 168 months' imprisonment.

## V. Position Paper as to Sentencing Factors

### A. Mr. Jacquin's Sentencing Request

Pursuant to 18 U.S.C. § 3553(a), Mr. Jacquin respectfully requests that this Honorable Court impose a sentence of 36 months' imprisonment in this case. The guideline range is incredibly high in comparison to the circumstances that drove Mr. Jacquin to commit this crime. A 36-month sentence is sufficient, but not greater than necessary to effectuate the goals of 18 U.S.C. § 3553(a).

It has been 17 years since *Booker* "demoted [the Guidelines] from rules to advice." *United States v. Roche*, 415 F.3d 614, 619 (7th Cir. 2005), *United States v. Booker*, 543 U.S. 220 (2005). The Guideline range is just one factor, amongst many, that the court must consider when determining the appropriate sentence for the individual defendant who stands before it. *United States v. Kimbrough*, 552 U.S. 85, 90 (2007). Sentencing courts may consider that a non-guideline sentence is appropriate if the Guideline sentence does not properly reflect the § 3553(a) considerations, or that the case warrants a different sentence. *Rita v. United States*, 551 U.S. 338, 351 (2007).

When a district court varies from the Guidelines, its decision '"may attract greatest respect when "it is based on the particular facts of a case."' *Peugh v. United States*, 133 S. Ct. 2072, 2080 (2013) (citing *Kimbrough* at 109). In fact, factors listed in 18 U.S.C. § 3553(a) may "warrant a departure, and perhaps a significant departure from …

the Guidelines." *United States v. Trujillo-Terrazas*, 405 F.3d 814, 819-821 (10th Cir. 2005). Indeed, guideline sentences are not presumed reasonable, and courts are to make an "individualized assessment based on the facts presented." *Gall v. United* States, 552 U.S. 38, 50 (2007). Furthermore, "every judge is at liberty to" sentence below the guidelines. *United States v. Moreno-Padilla*, 602 F.3d 802, 813 (7th Cir. 2010). After the proper offense level under the Guidelines is calculated, the district judge must then consider each of the § 3553(a) factors and "tailor the sentence" to fit the individual who stands before it. *United States v. Booker*, 125 S. Ct. 738, 743 (2005).

**B. A Sentence of 36 Months is Sufficient, But Not Greater than Necessary to Comply with the Sentencing Purposes Set Forth in 18 U.S.C. 3553(a)(2)**

This parsimony principle instructs courts to "impose a sentence sufficient, but not greater than necessary, to comply with the four identified purposes of sentencing: just punishment, deterrence, protection of the public, and rehabilitation." *Dean v. United States*, 137 S. Ct. 1170, 1175 (2017). As such, this Court has great latitude to impose a sentence that fits both the crime and Mr. Jacquin. This principle also "requires the district court to impose the least severe sanction necessary to achieve the four purposes of sentencing." *United States v. Jackson*, 537 F. Supp. 2d 990, 991 (E.D. Wisc. 2008).

1. To reflect the seriousness of the offense, promote respect for the law, and to provide just punishment for the offense.

Mr. Jacquin does not undermine the seriousness of the offense. Crystal meth is a highly-addictive drug as Mr. Jacquin knows first hand, albeit all too well. His drug use was both central to his existence and the main driving factor in his choice to sell drugs to the CS. This was not a profitable business for him or Mr. Mosley as the drug sales

supported their own addictions. Mr. Jacquin was not living lavishly; he was a victim to his own crime by getting high on his own supply. The role drugs played in Mr. Jacquin's life are just one of the reasons that justify a below-guideline sentence.

Below-guideline sentences have been given in our circuit based on the defendant's crime being motivated by his or her own addiction to drugs. *See, e.g.*, *United States v. Richardson*, No. 03-CR-474, 2008 WL 4899477, at *1 (N.D. Ill. Nov. 13, 2008) (substantially departing from the applicable guideline range by 52-62% after the court took into account the defendant's "age, her drug addiction, and the lack of violent behavior despite the presence of guns); and *United States v. Jackson*, 537 F.Supp.2d 990, 993 (E.D. Wis. 2008) (holding statutory mandatory minimum sentence of 60 months satisfied the parsimony provision because of judge's belief of the disparate treatment between crack and powder cocaine as well as defendant's past convictions being "suggestive of an addict, with possession offenses and other petty criminality often associated with addiction.")

Here, Mr. Jacquin has a lengthy history of addiction. He has no violence in his background. Furthermore, his criminal history is indicative of his battle with addiction.

Next, a 36-month sentence will promote respect for the law when taken into consideration with the other 3553(a) factors. As Mr. Jacquin self-reported, his incarceration has been a "blessing in disguise." PSIR at 19, para. 77. Mr. Jacquin's clouded judgment was due to the harm he self-inflicted. The high doses of crystal meth he consumed daily caused him to think irrationally and not completely adhere to the conditions of his pretrial release. Now that Mr. Jacquin has been incarcerated, he is free

and clear of all addictive substances. He has learned about the effects crystal meth and other toxins have on his body and does not wish to consume it again let alone get involved in the drug trade.

Finally, Mr. Jacquin will serve two sentences as a result of this case, and the goal of just punishment will be achieved. He will first serve the sentence imposed by this Honorable Court. Second, and perhaps more devastating, is the permanent sentence of deportation. Mr. Jacquin is a lawful permanent resident of the United States and not a United States Citizen. "The severity of deportation – 'the equivalent of banishment or exile,'" is undoubtedly the gravest punishment of all. *Padilla v. Kentucky*, 130 S. Ct. 1473, 1486 (2010) citing *Delgadillo v. Carmichael*, 332 U.S. 388, 390-391 (1947).

While Mr. Jacquin's mother is the only family member he speaks to who lives in the United States, he has called the United States his home for the past 30 years. He will most likely be deported upon completion of his sentence and will have to start over, at least temporarily, in Venezuela. Fortunately, he has recently been in touch with his father who owns auto parts stores in Venezuela. He intends to work for his father until he can save money to get back on his feet before possibly relocating to a European country. Nevertheless, just punishment for the offense will be achieved through a below-guideline sentence of 36-months.

2. To afford adequate deterrence to criminal conduct

Deterrence to criminal conduct consists of both general and specific. Criminal conduct for Mr. Jacquin will be adequately deterred. He will serve his prison sentence

and likely be deported. Being held behind bars is not a setting in which he wants to return.

General deterrence will also be achieved. According to the Interactive Data Analyzer on the United States Sentencing Commission's website, in 2021, nationwide, the sentences for Methamphetamine under U.S.S.G. § 2D1.1 have quite a bit of variance. https://ida.ussc.gov/analytics/saw.dlll?Dashboard.[2] When narrowed down to the crime of drug trafficking, Guideline 2D1.1, and a criminal history category of III, 34.1% of the sentences result in 120 months or more, 35.6% of the sentences range from 60 to 119 months, 18.9% of the sentences range from 24 to 59 months, and 11.4% of the sentence were less than 24 months. *Id.* Notably, you cannot select the actual amount of methamphetamine when using this feature. A further narrowing to the 7th Circuit with the same factors selected above yields the following results: 39% of defendants receive 120 months or more, 50.8% of defendants received 60-119 months and 9.8% of defendants received 24 to 59 months. *Id.* A 36-month sentence would serve as general deterrence as other individuals similarly situated (at least in terms of drug type, crime type, and criminal history category) have received sentences in this range.

3. To protect the public from further crimes of the defendant

Mr. Jacquin plans to start a drug-free, law-abiding life when he is released. No matter what country he ends up in, he does not have a need to go back to a life of addiction fueled by the life of crime that feeds it. Mr. Jacquin has embraced sobriety

---

[2] According to the Commission's website, a total of 1,293 cases under 2D1.1, methamphetamine, and Criminal History Category III were reported to the commission in 2021. No demographics were selected when conducting this analysis. https://ida.ussc.gov/analytics/saw.dlll?Dashboard (last visited November 21, 2022).

and will completely distance himself from any triggers upon release. As such, the public will be protected.

4. To protect the defendant with needed educational or vocational training, medical care, or other correctional treatment.

Mr. Jacquin is clearly in need of the Drug and Alcohol program provided by the Bureau of Prisons under 18 U.S.C. § 3621(e)(2)(B). Hopefully he will receive this much-needed treatment. He has taken steps at the MCC to complete coursework in substance use disorder treatment and is aware of the triggers he needs to avoid when he is released. His long history of drug abuse as well as other numerous medical conditions are listed in the PSIR on pages 16-19.

**C. A 36-Month Sentence is Reasonable Given the Nature and Circumstances of the Offense and Mr. Jacquin's Troubled History and Characteristics**

A sentencing court is also directed to take into account the "nature and circumstances of the offense and the history and characteristics of the defendant as well as the need for the sentence imposed to serve the four overarching aims of sentencing." *Dean v. United States,* 137 S. Ct. 1170, 1175 (2017). This is a run-of-the mill drug case involving Mr. Jacquin and his co-defendant selling crystal meth to a CS. However, this difference is that the sales were motivated by their own addictions. There were no fancy cars, lavish vacations, offshore bank accounts, exquisite jewels, or fine designer clothing involved.

Mr. Jacquin's troubled childhood was mentioned above and is discussed more privately in detail in the PSIR. Instead of being nurtured and loved, he was abused and introduced to drugs by the adult he was left in charge with. Fortunately, he had the

courage to not only run away, but to finish high school, despite the medical obstacles he encountered. He later went on to obtain a college degree and was able to maintain a stable work history despite his underlying addiction. Although his father was not involved in his upbringing, Mr. Jacquin is fortunate to have recently reconnected with him. He has a plan to work with his father upon release and does not want to go back to a life of crime.

Furthermore, the past year Mr. Jacquin has spent at the MCC has enabled him to both see and feel the changes he is capable of making. Mr. Jacquin is a smart man who got caught up in the viscous cycle of addiction for the last half of his life. Forced incarceration has taught him to see himself in a clear light with a clear head. Since being incarcerated, he has not only worked on himself, but has held a job in Food Service for which he earned a certificate in exceptional work for. Now that the clouds have cleared, the sky becomes clear for the endless opportunities that lie ahead.

### D. A 36-Month Sentence Will Not Cause an Unwarranted Sentencing Disparity

The purpose of 18 U.S.C. § 3553(a)(6) is "to eliminate unjustified sentencing disparities." *United States v. Durham*, 645 F.3d 883, 897 (7th Cir. 2011). Justification for a variance can be viewed through the Sentencing Commission's Interactive Data Analyzer as mentioned above. The other co-defendant in this case is a fugitive and did not appear for sentencing. However, additional justification for a below-guideline sentence can be taken from the requests that Mr. Mosley and the government asked for. The co-defendant's counsel asked for an 18-month sentence in his memorandum. 19-CR-754 at Dkt. 169. Oddly enough, the government asked for a lower sentence of one

year and one day. *Id.* at 170. An unwarranted sentencing disparity will not be created as the co-defendant's criminal history category was lower, and the parties also argued for a minor role in the offense. *Id.*

## VI. Conclusion

Mr. Jacquin is not a dangerous criminal and is ready to bury his drug-induced life, wherever it may belong, and begin anew. He deserves a second chance to prove, not only to this Honorable Court, but to himself, that he is stronger than the addiction that once succumbed him. This Honorable Court has the power to give that second chance to him. Courts must consider "those factors [that are] unique to an individual defendant … that are not taken into account when … the guideline range … [is calculated]." *United States v. Schmitt*, 495 F.3d 860, 865 (7th Cir. 2007).

WHEREFORE, the Defendant, Eduars Jacquin, respectfully requests a sentence of 36 months' imprisonment in this case. Such sentence is sufficient, but not greater than necessary, to achieve the purposes set forth in 18 U.S.C. § 3553(a).

Respectfully submitted,

*/s/Lisa M. Lopez*

Dated: November 21, 2022

Lisa M. Lopez
Lopez & Lopez, LTD.
53 W. Jackson Blvd.
Suite 1651
Chicago, IL 60604
(312) 922-2001

**CERTIFICATE OF SERVICE**

I, Lisa M. Lopez, attorney for Eduars Jacquin, certify that in accordance with FED. R. CRIM. P. 49, FED. R. CIV. P. 5, LR.5.5, and the General Order on Electronic Case Filing (ECF), the foregoing document was served on November 21, 2022, pursuant to the District Court's system as to ECF filers.

Respectfully submitted,

*/s/Lisa M. Lopez*

Lisa M. Lopez
Attorney No. 6301850
Lopez & Lopez, LTD.
53 West Jackson Blvd.
Suite 1651
Chicago, IL 60604
(312) 922-2001